MANION, Circuit Judge.
 

 In 1984, Elton Houston and Robert Brown were convicted of murdering Ronnie Bell and sentenced to thirty-five years in prison. In May 1985, while Houston’s and Brown’s appeals were pending, Anthony Sumner, a member of the notorious El Rukn gang, told law enforcement officials that Houston and Brown had not murdered Bell. Sumner identified the murderers as El Rukns J.L. Houston (Elton Houston’s brother), Earl Hawkins and Derrick Kees. In February 1989, J.L. Houston, Hawkins and Kees confessed to murdering Bell. None of this information was disclosed to Houston or Brown until, after finding out about the confessions on their own, their attorneys confronted the defendant prosecutors. With the information in hand, Houston and Brown filed post-conviction petitions in Illinois state court and were released from prison in October 1989.
 

 Shortly thereafter, Houston and Brown filed this section 1983, individual-capacity lawsuit against Cecil A. Partee, the former Cook County State’s Attorney, former Assistant State’s Attorneys Thomas Dwyer and Larry Wharrie, and various Chicago police officers. The defendant prosecutors filed a motion to dismiss claiming absolute immunity from suit. The district court denied the motion,
 
 Houston v. Partee,
 
 758 F.Supp. 1228 (N.D.Ill.1991), and the prosecutors appeal. This appeal is within.our jurisdiction on the authority of
 
 Nixon v. Fitzgerald,
 
 457 U.S. 731, 741-43, 102 S.Ct. 2690, 2696-98, 73 L.Ed.2d 349 (1982) (denial of the substantial claim of absolute immunity is immediately appealable under 28 U.S.C. § 1291), and we affirm with instructions.
 

 I.
 
 [1]
 

 In the evening hours of June 18, 1983, Ronnie Bell was murdered in a gang-related, drive-by shooting. Elton Houston and Robert Brown were- arrested for and convicted of the Bell murder. Houston’s first jury trial resulted in a mistrial, but, in August 1984, the jury in his second trial returned a guilty verdict; Brown was convicted in a bench trial in April 1984. Their convictions were based, in large part, on questionable identifications by three bystanders. During his two trials, Houston presented several witnesses who testified that Houston was with them at the time of the murder. In addition, throughout his trials, Houston maintained that he was being mistaken by the identifying witnesses for his brother J.L. Houston. It was undisputed that J.L. owned the car involved in
 
 *364
 
 the shooting; and J.L’s weightlifting belt, J.L.’s fingerprints, and the murder weapons were found in the car. According to the complaint, J.L. Houston was known to the police as an El Rukn hit man, and Elton Houston was not an El Rukn.
 

 After he was convicted, and before Houston’s second trial, Brown filed a motion for a new trial based on newly discovered evidence. ' He attached affidavits from “two informed sources” stating that J.L. Houston, Earl Hawkins and a third unnamed El Rukn had killed Ronnie Bell.
 
 [2]
 
 The motion was denied. Houston and Brown appealed their convictions to the Illinois Appellate Court, and the appeals were consolidated. One issue raised on appeal was the newly discovered evidence and the reliability of the affidavits.
 

 In May 1985, while the plaintiffs’ appeals were pending, a high-ranking member of the El Rukns, Anthony Sumner, was arrested and became a cooperating witness in the long-term investigation of the El Rukn gang by the Cook County State’s Attorney and the United States Attorney for the Northern District of Illinois. He was interviewed by Chicago police officers, Assistant United States Attorneys and Assistant State’s Attorneys — including defendant Larry Wharrie. Among the numerous crimes that Sumner disclosed to the law enforcement officials, he described the Bell killing in great detail. He stated that Bell was shot in retaliation for a prior shooting of an El Rukn and that three El Rukns were involved, one driving and two shooting. Sumner said that the shooting took place near a viaduct on 88th Street in Chicago and that J.L. Houston’s car was used. These details matched the facts as they were known to the police and the statements given by the witnesses at the plaintiffs’ trials. Sumner specifically identified the driver of the car as J.L. Houston and identified the actual shooters as Earl Hawkins and Derrick Kees.
 

 Wharrie — although he had prosecuted Houston and Brown, and although he knew that Sumner’s statement corroborated both Houston’s testimony at trial and the affidavits submitted by Brown, the reliability of which was at issue in the pending appeals — did not disclose Sumner’s statements to Houston, Brown or their attorneys. Rather, when Brown and Houston, through their attorneys, repeatedly requested any information that Sumner had provided about the Bell murder, Wharrie falsely told them that Sumner had provided no evidence favorable to Houston or Brown. In addition, although Wharrie called Sumner as a grand jury witness on numerous occasions, asking him about dozens of other El Rukn crimes (including six to ten other murders), he never inquired about the Bell murder.
 

 In 1986, the Cook County State’s Attorney’s Office filed appellate briefs in the plaintiffs’ appeals. In the briefs, the prosecutors represented to the Illinois Appellate Court that the newly discovered evidence presented in Brown’s post-trial motion was not reliable. Later, at oral argument on the appeals, the prosecutors again told the Illinois Appellate Court that the affidavits submitted by Brown were uncorroborated and, therefore, unreliable. On December 23, 1986, the Illinois Appellate Court affirmed Houston’s and Brown’s convictions; among other things, the Illinois Appellate Court agreed with the trial court’s finding that neither affidavit was credible enough to require a new trial.
 
 People v. Houston,
 
 151 Ill.App.3d 102, 104 Ill.Dec. 451, 460, 502 N.E.2d 1111, 1120 (1986). The Illinois Supreme Court denied Houston’s and Brown’s petition for leave to appeal in May 1987.
 
 People v. Houston,
 
 115 Ill.2d 546, 110 Ill.Dec. 461, 511 N.E.2d 433 (1987) (table).
 

 Despite repeated further requests for information from plaintiffs’ counsel, the stonewalling continued during 1987 and 1988. Then, in February 1989, Hawkins
 
 *365
 
 (who had been cooperating with law enforcement officials and providing credible information and testimony since 1987) confessed to federal and state law enforcement officials that the Bell killing had indeed been committed by him along with J.L. Houston and Kees. He also stated that Houston and Brown did not participate in the shooting. Soon after Hawkins’ confession, J.L. Houston and Kees (both then in prison) likewise admitted their own guilt and gave detailed accounts of the Bell killing.
 

 The complaint alleges that defendants Cecil A. Partee and Thomas Dwyer knew about Sumner’s statement and the three confessions. Nonetheless, amazingly, they did not disclose any of this information to Houston, Brown or their attorneys. It was only three weeks after the confessions, when plaintiffs’ attorneys confronted them with information obtained from other sources, that Partee and Dwyer admitted they had confessions from J.L. Houston, Hawkins and Kees. Even then, Partee and Dwyer failed to reveal Sumner’s statement; they did not tell Houston or Brown about Sumner’s statement until July 1989, after the plaintiffs developed information from other sources. In the meantime, Houston and Brown had served four years in prison for a crime that they did not commit.
 

 II.
 

 The defendant prosecutors, Cecil A. Partee, Thomas Dwyer and Larry Wharrie, argue that this action must be dismissed because they are absolutely immune from suit. Not all official actions of a state prosecutor are absolutely immune from section 1983 liability. Rather, prosecutors are absolutely immune from liability for damages under 42 U.S.C. § 1983 only “for their conduct in ‘initiating a prosecution and in presenting the State’s case,’ insofar as that conduct is ‘intimately associated with the judicial phase of the criminal process.’ ”
 
 Burns v. Reed,
 
 — U.S. —, —, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) (quoting
 
 Imbler v. Pachtman,
 
 424 U.S. 409, 430-31, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976)). Accordingly, prosecutors have been granted absolute immunity for their conduct in probable cause hearings,
 
 see Burns,
 
 — U.S. at —-—, 111 S.Ct. at 1940-42, for their conduct before grand juries,
 
 see Lucien v. Preiner,
 
 967 F.2d 1166, 1167 (7th Cir.),
 
 cert. denied,
 
 — U.S. —, 111 S.Ct. 267, 121 L.Ed.2d 196 (1992), and for the knowing use of false testimony and the deliberate suppression of exculpatory evidence at trial,
 
 Imbler,
 
 424 U.S. at 431 & n. 34, 96 S.Ct. at 995 & n. 34. A state prosecutor performing investigative or administrative functions, in contrast, may only assert a qualified immunity.
 
 Burns,.
 
 — U.S. at —-—, 111 S.Ct. at 1943-44;
 
 Auriemma v. Montgomery,
 
 860 F.2d 273, 277-78 (7th Cir.1988),
 
 cert. denied,
 
 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989). Thus, prosecutors have only qualified immunity for authorizing a warrantless wiretap in the interest of national security,
 
 Mitchell v. Forsyth,
 
 472 U.S. 511, 520, 105 S.Ct. 2806, 2811, 86 L.Ed.2d 411 (1985), and for giving legal advice to police officers,
 
 Burns,
 
 — U.S. at —-—, 111 S.Ct. at 1942-45.
 

 In this case, the defendant prosecutors failed to disclose exculpatory evidence discovered after Houston and Brown were convicted but while their direct appeals were pending in the Illinois Appellate Court. We must decide on which side of the absolute/qualified immunity line such an act falls. “Absolute immunity from civil liability for damages is of a ‘rare and exceptional character.’ ”
 
 Auriemma,
 
 860 F.2d at 275 (citation omitted). “The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties.”
 
 Burns,
 
 — U.S. at —, 111 S.Ct. at 1939. Thus, “the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.”
 
 Id.
 

 The prosecutors argue that they are absolutely immune from suit because the plaintiffs’ appeals were still pending before the Illinois Appellate Court. Defending the appeals, the prosecutors argue, was
 
 *366
 
 part of the prosecution of Houston and Brown .thus entitling the prosecutors to absolute immunity. The prosecutors rely on the substantial case law granting absolute immunity for acts done in various post-conviction proceedings.
 
 See, e.g., Lucien,
 
 967 F.2d at 1167-68 (executive clemency proceedings);
 
 Johnson v. Kegans,
 
 870 F.2d 992, 997 (5th Cir.),
 
 cert. denied,
 
 492 U.S. 921, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989) (parole proceedings);
 
 Joseph v. Patterson,
 
 795 F.2d 549, 557 (6th Cir.1986),
 
 cert. denied,
 
 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987) (direct appeal);
 
 Henzel v. Gerstein,
 
 608 F.2d 654, 657 (5th Cir. 1979) (direct appeal);
 
 Bruce v. Wade,
 
 537 F.2d 850, 852 (5th Cir.1976) (habeas corpus proceedings).
 

 We do not dispute these cases. But there is a critical distinction between such cases and this case: The defendant prosecutors in this case were not involved in the post-conviction proceedings; that is, they were not personally prosecuting the appeal.
 
 [3]
 
 At oral argument, the defendant prosecutors argued that this distinction does not matter because absolute immunity, somehow, “attached” during the prosecution of Houston and Brown in the Illinois trial court and, once attached, continues indefinitely. But this position cannot be correct. In the first place, it contradicts the prosecutors’ argument that the pending appeals gave them absolute immunity. If absolute immunity “attaches” at trial and then continues indefinitely, it would hardly matter that the appeal in this case was still pending when the prosecutors discovered that others may have murdered Bell. Under the prosecutors’ reasoning, they would already be absolutely immunized before and after all appeals were concluded. Also, apparently only defendant Wharrie prosecuted Houston and Brown in the trial court. Thus, this “attachment” theory would only shield him. The prosecutors surely cannot argue that absolute immunity indefinitely attaches to every Cook County State’s Attorney once a prosecution begins.
 

 More fundamentally, this “attachment” argument distorts the nature of absolute prosecutorial immunity. Absolute immunity is not a systemic immunity like that afforded states under the Eleventh Amendment; it does not protect government entities. Neither does it rest on an individual’s status as a prosecutor. Rather, the Supreme Court has taken a “functional approach” to immunity,
 
 Burns,
 
 — U.S. at —, 111 S.Ct. at 1939; a prosecutor’s entitlement to absolute immunity is grounded in “the nature of the functions he was performing in this case.”
 
 Mitchell,
 
 472 U.S. at 521, 105 S.Ct. at 2813. We do not decide whether a
 
 prosecutor
 
 is entitled to absolute immunity; we decide whether a prosecutor
 
 performing a particular function
 
 is entitled to absolute immunity.
 
 Juries v. McGowan,
 
 957 F.2d 345, 348 (7th Cir.1992) (“Absolute immunity is granted with an eye to the function performed by the sued official, not to the status or identity of that official.”);
 
 Auriemma,
 
 860 F.2d at 277 (“Absolute immunity is designed to protect the functions that particular government officials perform, not the government officials themselves.”).
 

 When the defendant prosecutors discovered the evidence exculpating Houston and Brown, they were not functioning as prosecutors. Wharrie had already succeeded in obtaining the convictions of Houston and Brown, and the prosecution of Houston’s and Brown’s appeal had been passed on to others in the State’s Attorney’s office. The prosecutors’ knowledge of and failure to disclose Sumner’s original statements and the three subsequent confessions thus had no connection to their “role as advocate for the State.”
 
 Burns,
 
 — U.S. at —, 111 S.Ct. at 1942;
 
 see also Allen v. Lowder,
 
 875 F.2d 82, 86 (4th Cir.1989) (district attorney “cannot seriously argue that
 
 *367
 
 his actions resulted from any advocacy role in rehabilitating [the plaintiffs] conviction” because he “did not himself participate in the presentation of the state’s appeal”).
 

 Rather, the defendant prosecutors are in the same position as the defendant Chicago police officers: state law enforcement officials who, during a large scale investigation of the El Rukn gang, discovered — and then suppressed — evidence which could have exculpated Houston and Brown. Federal courts, including this one, have been willing to grant prosecutors absolute immunity for gathering information and evidence in furtherance of a decision to initiate a prosecution.
 
 See, e.g., Joseph,
 
 795 F.2d at 555. But since Houston and Brown had already been convicted, the continuing investigation in the El Rukns case was hardly a precursor to a prosecution of Houston and Brown. And there is no other basis for distinguishing the prosecutors’ acts from those of the police. The prosecutors are thus not entitled to any more immunity than the defendant police officers. The defendant prosecutors were acting solely in an investigative capacity; accordingly, they are only entitled to assert a qualified immunity.
 

 Our conclusion that the defendant prosecutors are not absolutely immune from liability is confirmed by application of the factors that have been found particularly important in determining whether absolute immunity bars a suit: “(1) whether an historical or common law basis exists for granting an official absolute immunity from suit for performing a particular function; (2) whether performing the function poses special risks of vexatious litigation; and (3) whether sufficient safeguards exist to prevent abuses of power.”
 
 Auriemma,
 
 860 F.2d at 275;
 
 see also Burns,
 
 — U.S. at —-—, 111 S.Ct. at 1941-44;
 
 Mitchell,
 
 472 U.S. at 521-22, 105 S.Ct. at 2813;
 
 Luden,
 
 967 F.2d at 1167.
 

 First of all, the defendant prosecutors have failed to identify (and we have not found) any historical or commonlaw support for extending absolute immunity to prosecutors who fail to disclose exculpatory evidence acquired when they are no longer personally prosecuting the criminal case. Prosecutors were absolutely immune from damage liability at common law for the decision to initiate a prosecution,
 
 see Imbler,
 
 424 U.S. at 421-22, 96 S.Ct. at 990-91; and for making or eliciting false or defamatory statements in any hearing before a tribunal which performed a judicial function,
 
 see Burns,
 
 — U.S. at —, 111 S.Ct. at 1941. In
 
 Imbler,
 
 424 U.S. at 431 n. 34, 96 S.Ct. at 995 n. 34, the Supreme Court refused to distinguish between use of perjured testimony and the deliberate -with-, holding of exculpatory evidence. But, unlike this case,
 
 Imbler
 
 (and the other cases we have reviewed) involved a prosecutor’s preparation for or participation in some type of judicial proceeding. At most, the absolute immunity granted prosecutors at common law extended only to acts in preparation for or during a judicial proceeding.
 

 The next factor — risk of vexatious litigation — also does not support granting absolute immunity in this case. In
 
 Burns,
 
 — U.S. at —, 111 S.Ct. at 1943, the Supreme Court clarified that our concern with vexatious litigation “is not merely a generalized concern with interference with an official’s duties, but rather is a concern with interference with the conduct closely related to the judicial process.” “Absolute immunity,” the Court stated, “is designed to free the
 
 judicial process
 
 from the harassment and intimidation associated with litigation.”
 
 Id.
 
 The risk of vexatious litigation, therefore, “justifies absolute prosecutorial immunity only for actions that are connected with the prosecutor’s role in judicial proceedings, not for every litigation-inducing conduct.”
 
 Id.
 
 Here,, as when he gives legal advice to police officers, a prosecutor is less likely to become entangled in litigation than when he is initiating and prosecuting a case. A defendant is less likely to be aware that a prosecutor, no longer involved in the prosecution, is withholding exculpatory evidence. More importantly, denying absolute immunity to a prosecutor who, after his role in the prosecution is finished, withholds exculpatory evidence, cannot interfere with that prosecutor’s conduct in judicial proceedings. Any litigation arising from such prosecutorial abuses,
 
 *368
 
 then, is not the type of litigation that we are concerned about here.
 

 Finally, there are few safeguards to prevent the abuses of power alleged in this case. Generally, the judicial process itself is a sufficient check to prevent prosecutorial abuses from going unredressed. The judicial process is self-correcting. Procedural rules arid the ability to confront the prosecutor at trial, appeals, and the possibility of collateral relief obviate the need for damages actions to control unconstitutional conduct and prevent unjust results.
 
 Burns,
 
 — U.S. at —, 111 S.Ct. at 1942;
 
 Mitchell,
 
 472 U.S. at 522-23, 105 S.Ct. at 2813-14. In this case, however, the judicial process was largely unavailable as a check against the abuses that occurred. No court could restrain the out-of-court activities of the defendant prosecutors when they were no longer involved in the case. Since the alleged prosecutorial abuses took place after conviction, the safeguards normally available at trial could not control the defendant prosecutors’ alleged unconstitutional conduct. Because the defendant prosecutors made no appearance in the Illinois Appellate Court and withheld the exculpatory evidence from that court, that system provided no opportunity to prevent an unjust result. Houston and Brown did ultimately obtain some relief in state post-judgment proceedings — that is, they were finally released from -prison. Nevertheless, Houston and Brown spent four years in prison for a crime they did not commit. Without this damage action, they will probably never have an opportunity to be compensated for those lost years.
 
 [4]
 

 There is a presumption against granting government officials absolute immunity. “Public officials seeking absolute immunity from civil liability bear the burden of showing that overriding considerations of public policy require that they be exempt from personal liability for their alleged unlawful conduct.”
 
 Auriemma,
 
 860 F.2d at 275. The defendant prosecutors have not convinced us that absolute immunity for their suppression of Sumner’s statement and the three confessions is necessary for the continued efficient functioning of our criminal justice system. Making prosecutors answer for their post-prosecution acts that were not related to the prosecution will not hamper them in initiating a prosecution or' in presenting the state’s case.
 
 See Imbler,
 
 424 U.S. at 424-28, 96 S.Ct. at 992-94. In the absence of precedent requiring us to do so, we decline to extend absolute prosecutorial immunity from claims by people whom the prosecutors are no longer prosecuting.
 

 III.
 

 The defendant prosecutors Cecil A. Par-tee, Thomas Dwyer and Larry Wharrie are not entitled to absolute immunity. We thus Affirm the district court’s order denying the defendant prosecutors’ motion to dismiss and Remand for further proceedings.
 

 
 *369
 
 The prosecutors are, however, on remand, entitled to assert qualified immunity from suit. Regardless of whether the plaintiffs eventually prevail in this section 1983 action, their allegations — if proven— may constitute a violation of Rule 3.8(b) of the Illinois Rules of Professional Conduct: “A public prosecutor or other government lawyer in criminal litigation shall make timely disclosure to counsel for the defendant, or to the defendant if the defendant is not represented by a lawyer, of the existence of evidence, known to the prosecutor or other government lawyer, that tends to negate the guilt of the accused or mitigate the degree of the offense.” Since for purposes of this opinion we are assuming the plaintiffs’ assertions are true, it is premature to conclude that the defendants’ actions were as reprehensible as alleged. Nevertheless, the defendants are officers of the court, and as such, their alleged suppression of the exculpatory evidence and deliberate falsehoods about the existence of such evidence raises very serious questions.
 

 We are well aware of our responsibility under Canon 3(B)(3) of the Code of Judicial Conduct for United States Judges: “A judge should take or initiate appropriate disciplinary measures against a judge or lawyer for unprofessional conduct of which the judge may become aware.” It appears to this court that if the alleged behavior of the defendant prosecutors is true, it would merit investigation by the appropriate disciplinary body
 
 of the
 
 Illinois Attorney Registration and Disciplinary Commission. Accordingly, we DIRECT THE CLERK OF COURT to send a copy of this opinion to the Illinois Attorney Registration and Disciplinary Commission to monitor further developments of this case on remand and to take any appropriate disciplinary measures it deems necessary.
 

 [1]
 

 . At this point in the proceedings, we state the following facts as they appear in the complaint, which we must accept as true. Further details about the murder and the trials of Houston and Brown can be found in
 
 People v. Houston,
 
 151 Ill.App.3d 102, 104 Ill.Dec. 451, 502 N.E.2d 1111 (1986).
 

 [2]
 

 . Although not included in the allegations in the complaint, further details about these two affidavits are outlined in
 
 Houston,
 
 104 Ill.Dec. at 459, 502 N.E.2d at 1119. According to that court, the affidavit of Evelyn Mapp stated that Earl Hawkins confessed to Mapp that he and two other men had killed Bell; the affidavit of Darrell Cannon stated that J.L. Houston admitted to Cannon that he had participated in the shooting with two others.
 

 [3]
 

 . The complaint alleges that defendants Whar-rie and Dwyer filed a brief and presented oral argument in the Illinois Appellate Court. The Illinois Appellate Court decision, however, does not list Wharrie or Dwyer as attorneys for the State.
 
 Houston,
 
 104 Ill.Dec. at 453, 502 N.E.2d at 1113. (Partee assumed office after the appeals.) Also, at oral argument before this court, the parties agreed that none of the defendant prosecutors were involved in that appeal. "Wharrie and Dwyer did not file the state's brief or argue the appeal.” Fn.4, Appellants' brief.
 

 [4]
 

 . We have suggested another method for discerning the dividing line between absolute and qualified immunity: "whether the injury depends on the judicial decision. If there would be no loss but for the judge’s acts, then the prosecutor or witness who induces the judge to act has absolute immunity.”
 
 Millspaugh v. County Dep't of Public Welfare,
 
 937 F.2d 1172, 1175 (7th Cir.),
 
 cert. denied,
 
 — U.S. —, 112 S.Ct. 638, 116 L.Ed.2d 656 (1991). Previously, this test has only been applied to pre-conviction prosecutorial abuses,
 
 cf. Luden
 
 v.
 
 Preiner,
 
 967 F.2d 1166 (7th Cir.),
 
 cert. denied,
 
 61 U.S.L.W. 3263, — U.S. —, 113 S.Ct. 267, 121 L.Ed.2d 196 (1992), and applying it to the facts in this case is somewhat awkward. We believe, however, that it also supports our holding. The defendant prosecutors discovered and then suppressed the exculpatory evidence after Houston and Brown had been convicted. Although, at the time of Sumner’s statement, the case was still pending in the Illinois Appellate Court, Houston's and Brown’s injury did not depend on that court’s decision. Rather, there was an actionable harm without the mediation of a judge. Every day that the prosecutors failed to disclose the exculpatory evidence was a day that Houston and Brown were wrongly imprisoned. This injury does not flow from (and the plaintiffs are not seeking damages for) Wharrie’s prosecution of the wrong men or the conduct of the prosecution on appeal. Rather, Houston and Brown seek damages for the defendant prosecutors’ failure to correct Wharrie's mistake once they discovered evidence that Houston and Brown may not be guilty.