Lee Wayne PATTERSON, Appellant,

v.

Steven VON RIESEN, in his official capacity as Hall County Attorney; P. Stephen Potter, in his official capacity as Deputy Hall County Attorney; County of Hall, Nebraska, a body politic incorporate; Robert F. Parratt, former warden of the Nebraska Penal and Correctional Complex; Charles J. Black, former warden of the Nebraska Penal and Correctional Complex; Gary E. Grammer, former warden of the Nebraska Penal and Correctional Complex; John Dahm, former warden of the Nebraska Penal and Correctional Complex; Harold Clark, Director of Department of Correctional Services, Acting Warden of the Nebraska Penal and Correctional Complex; John B. Greenholtz, former member of the Nebraska Parole Board; Eugene E. Neal, former member of the Nebraska Parole Board; Wayne L. Schreurs, former member of the Nebraska Parole Board; Doris D. Collins, former member of the Nebraska Parole Board; Linda Babbitt Jaeckel, former member of the Nebraska Parole Board; Marj Marlette, former member of the Nebraska Parole Board; Ronald L. Bartee, former member of the Nebraska Parole Board; Carlos Alvarez, former member of the Nebraska Parole Board; Mary E. Wieseman, former member of the Nebraska Parole Board; Murrell McNeil, former member of the Nebraska Parole Board; Leland A. Oberg, former member of the Nebraska Parole Board;

Donald D. McCall, former member of the Nebraska Parole Board; Marlene Cupp, 1990–Current member of the Nebraska Parole Board; Michael D. McLaughlin, 1990–Current member of the Nebraska Parole Board, Appellees.

No. 92–3422.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1993.

Decided July 23, 1993.

Randall L. Goyette, and Alfonza Whitaker, Lincoln, NE, argued, for appellees.

Before FAGG and MAGILL, Circuit Judges, and STUART,* Senior District Judge.

MAGILL, Circuit Judge.

This appeal comes from an order of the district court dismissing appellant's 42 U.S.C. § 1983 claims pursuant to Fed.R.Civ.P. 12(b)(6). We affirm, as we conclude that the prosecuting attorneys, members of the Nebraska Parole Board, and the prison wardens are absolutely immune from damages on Patterson's wrongful conviction claims.

## I. BACKGROUND

Lee Wayne Patterson was convicted on or about November 18, 1980, of conspiracy to commit murder, a crime for which he was neither charged nor indicted. This surprising result occurred because of an incorrect jury instruction: At the request of Patterson's public defender, the court submitted a jury instruction which allowed the jury to convict Patterson of conspiracy to commit murder as a lesser included offense to first degree murder, the crime for which Patterson was charged and indicted.[1] The jury was to consider the conspiracy charge *only* if it concluded that Patterson was not guilty of first or second degree murder. *See State v. Patterson,* 232 Neb. 304, 440 N.W.2d 242 (1989). The jury exercised its option, and convicted Patterson of conspiracy.

After Patterson unsuccessfully exhausted his state post-conviction remedies, he filed a petition for writ of habeas corpus. The magistrate judge recommended that habeas relief be granted, concluding that conspiracy to commit murder was not a lesser included offense to any of Patterson's charged offenses, and that Patterson's counsel was constitutionally ineffective in proffering the

Ann C. Janusz, Omaha, NE, argued (Kirk E. Brumbaugh, on the brief), for appellant.

* THE HONORABLE WILLIAM C. STUART, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1. Patterson was convicted under a "step instruction." The instruction requested that the jury first consider whether Patterson was guilty of first degree murder; if it found he was not, the jury was to consider the lesser included offense of second degree murder. If the jury concluded Patterson was not guilty of second degree murder, it was then to consider the lesser included offense of conspiracy to commit murder. Finally, if the jury did not find Patterson guilty of conspiracy to commit murder, it was to consider whether he was guilty of manslaughter. *See State v. Patterson,* 440 N.W.2d at 244.

charge. *See Patterson v. Dahm,* 769 F.Supp. 1103, 1112 (D.Neb.1991). Because the jury was allowed to consider conspiracy to commit murder only after concluding Patterson was not guilty of first or second degree murder, the magistrate judge concluded that Patterson clearly was prejudiced by the incorrect jury charge. *Id.*

The district court accepted the recommendation and granted habeas corpus relief on April 23, 1991. Patterson was released from custody on June 18, 1991.

Patterson then brought this § 1983 action against the prosecutors, for failing to object to the improper jury instructions; Hall County, for ratifying the prosecutors' actions; members of the Nebraska Parole Board, for denying his requests for parole; and the wardens of the penal institution at which he was confined, for wrongfully confining him and failing to investigate or approve his requests for parole.

The district court dismissed the claims against the prosecutors, Hall County, and the parole board members based upon absolute immunity, and dismissed the claims against the wardens based upon qualified immunity.

## II. DISCUSSION

We review the district court's grant of a motion to dismiss for failure to state a claim de novo. In considering a motion to dismiss under Rule 12(b)(6), we must construe the allegations in the complaint in the light most favorable to the plaintiff. *Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir.1982). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted).

We note first that "[a]n absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler v. Pachtman,* 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 989 n. 13, 47 L.Ed.2d 128 (1975). Thus, if the prosecutors and parole board members are entitled to absolute immunity, dismissal on Rule 12(b)(6) grounds was proper.

### A. *The Prosecutors*

The district court correctly concluded that absolute immunity bars Patterson's claim against the prosecutors. Prosecutors are entitled to absolute immunity for their "conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed,* —— U.S. ——, ——, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) (quoting *Imbler,* 424 U.S. at 430, 431, 96 S.Ct. at 994, 995 (internal citations omitted)). Absolute immunity attaches to an official's function, rather than to the official's position. *See Burns,* —— U.S. at ——, 111 S.Ct. at 1939 (prosecutor cloaked with absolute immunity for actions at a probable cause hearing, but protected only by qualified immunity when providing legal advice to police). Thus, we must examine whether the function exercised by these prosecutors is entitled to absolute immunity.

We conclude that the prosecutors are entitled to absolute immunity. The source of Patterson's injury (insofar as it can be attributed to the prosecutors) was the prosecutors' failure to point out the problem in the lesser included offense charge. A prosecutor deciding whether to object to a proffered jury charge during trial clearly performs a function "intimately associated with the judicial phase of the criminal process"; therefore, these prosecutors are absolutely immune from damages flowing from that conduct.

Patterson has tried to recast his injury to avoid this immunity. He claims that the injury flows not simply from the prosecutors' failure to object to the charge at trial, but also from the prosecutors' failure to bring the error to light in the post-conviction proceedings. To support this argument, Patterson cites the Seventh Circuit decision in *Houston v. Partee,* 978 F.2d 362 (7th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1647, 123 L.Ed.2d 269 (1993), for the proposition that absolute immunity does not protect a prosecutor who fails to disclose exculpatory evidence.

*Partee* does not support Patterson's argument. In *Partee* the Seventh Circuit emphasized that the exculpatory evidence came to light only *after* trial had ended and the prosecutors were no longer associated with the case. *Id.* at 366–67. Thus, the damage did not flow from an act intimately related to the judicial phase of the criminal process; such a suit would not attach liability to a prosecutor's decision about whether to prosecute or his conduct as an advocate for the State. Second, the *Partee* court emphasized that there are no systemic protections (other than the threat of damages) to protect the defendant's rights when a prosecutor withholds evidence discovered after conviction. *Id.* at 368. Similar considerations guided the court in *Wilkinson v. Ellis,* 484 F.Supp. 1072 (E.D.Pa.1980), in which the court held that a prosecutor was not absolutely immune from damages caused when he affirmatively destroyed, rather than simply withheld, exculpatory evidence. *Id.* at 1083–84.

None of the factors found dispositive in these other cases is present here. First, Patterson's damages, even as recast, can only flow from the prosecutors' failure to object to the jury charge; without that act, there would be no reason for the prosecutors to reveal a defect in Patterson's conviction. Thus, a finding of liability would necessarily make these prosecutors liable for their conduct in the jury charge conference, and subject them to litigation for their conduct at trial. This is exactly what the doctrine of absolute immunity forbids. Absolute immu-

nity would be a hollow doctrine if disgruntled prisoners could circumvent that immunity by the simple expedient of alleging that the prosecutor failed to reveal his trial error. The Supreme Court has created no requirement that prosecutors reveal their trial mistakes to maintain their absolute immunity, and we will not create one here.

Second, unlike the cases Patterson cited, the trial process could protect the defendant in this situation. The incorrect jury instruction occurred in open court, and Patterson, as well as the judge, had full access to the information necessary to correct the mistake during trial. This is certainly not such an extraordinary situation that damages are the only possible method to police a prosecutor's conduct.

We conclude that the prosecutors are absolutely immune for all damages flowing from their conduct at the jury charge conference, and affirm the district court's dismissal of these claims.

We also affirm the district court's dismissal of the claim against Hall County. Because Patterson may not hold the prosecutors liable, he may not hold the county liable.[2]

### B. Patterson's Claims Against the Parole Board

■ The district court also properly concluded that absolute immunity bars Patterson's claims against the parole board members. We have held that parole board mem-

---

**2.** Patterson also claims that Hall County might be liable under the rationale set out in *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), because the prosecutors were decisionmakers with the authority to set county policy through their actions in court. Without deciding whether these prosecutors were such decisionmakers, we conclude this argument is without merit. For the county to be liable, Patterson must be able to attach liability to the decision in question. In *Pembaur,* that was not a problem because the prosecutor/decisionmaker was not engaging in a function protected by absolute immunity. Here, the prosecutor was. Because of the prosecutors' absolute immunity, Patterson cannot attach liability to the decision in question, and, thus, even if the policy was county policy, Patterson still may not recover damages. Patterson also claims that further discovery might show that Hall County underfunded its public defenders and thus would be

liable for his public defender's decision to offer the lesser included offense instruction. We disagree. Patterson's complaint claimed only that Hall County was liable because of its "authorization and ratification thereof of the acts of its agents," Compl. of Lee Wayne Patterson, ¶ 37, and that "[d]efendant Hall County, through its officers, employees, and agents, caused the Plaintiff to be incarcerated ... wrongly and in deprivation of his constitutional rights...." Compl. at ¶ 39. The Supreme Court has held that public defenders are not agents of the state or state actors for purposes of § 1983. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981); thus Patterson's public defender was not an agent of the state. Patterson made no claim in his complaint that the public defender system in Hall County was underfunded; he may not raise on appeal a claim he did not raise in district court. *See, e.g., Rogers v. Masem,* 788 F.2d 1288, 1292 (8th Cir.1985).

bers are absolutely immune from suit when considering and deciding parole questions. *Nelson v. Balazic,* 802 F.2d 1077, 1078 (8th Cir.1986); *Gale v. Moore,* 763 F.2d 341, 344 (8th Cir.1985); *Evans v. Dillahunty,* 711 F.2d 828, 830 (8th Cir.1983). In his complaint, Patterson alleged merely that the parole board members were liable for "failing to approve, grant, and honor" his applications for parole. Compl. at ¶ 45–58. We read this allegation to challenge the parole board's decision not to grant parole.[3] Accordingly, Patterson's claims are barred by absolute immunity.

Patterson also claims that the parole board members acted outside their jurisdiction in basing their decision to deny his parole on his refusal to admit his guilt. It is true that an official acting outside her jurisdiction loses immunity; however, Patterson misunderstands the scope of official jurisdiction. An official does not act outside her jurisdiction simply because she makes an unconstitutional or unlawful decision. Rather, the inquiry focuses on whether the subject matter of the decision was within the official's power, and whether the official was acting in her official capacity at the time of decision. *See, e.g., Liles v. Reagan,* 804 F.2d 493 (8th Cir.1986). A decision about whether or not to grant parole is at the heart of a parole board member's jurisdiction, whether that decision is based on lawful or unlawful considerations. The parole board members are absolutely immune from any damages flowing from their decision to deny Patterson's parole.

### C. Patterson's Claims Against the Wardens

The dismissal of Patterson's claims against the prison wardens who served during his incarceration stands on a slightly different posture. The district court dis-

missed these claims on the basis that the wardens had qualified, rather than absolute, immunity from damages. We affirm, but on a different basis, as we conclude that the wardens are cloaked with absolute immunity for continuing to incarcerate a prisoner pursuant to a valid court order in the face of his claim that he was wrongfully convicted.

The Supreme Court applies a two-step approach to determine whether a particular official is entitled to absolute immunity. The Court initially considers "whether an official claiming immunity under § 1983 can point to a common-law counterpart to the privilege he asserts." *Malley v. Briggs,* 475 U.S. 335, 339–40, 106 S.Ct. 1092, 1095–96, 89 L.Ed.2d 271 (1986). "If 'an official was accorded immunity from tort actions at common law when the Civil Rights Act was enacted in 1871, the Court next considers whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions.'" *Id.* at 340, 106 S.Ct. at 1095 (quoting *Tower v. Glover,* 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984)). We believe that both prongs of this test are satisfied.

First, we believe that at common law, jailers were absolutely immune from damages for confining a prisoner pursuant to a valid order of confinement. In *Francis v. Lyman,* 216 F.2d 583 (1st Cir.1954), the court found the privilege of a jailor to hold a prisoner pursuant to a judicial process regular on its face and issued by a court of competent jurisdiction "quite as time-honored in the Anglo–American common law as is the immunity of members of the legislature and of judges from civil liability for acts done within the sphere of their judicial activities." *Id.* at 588–89. *See also Hoffman v. Halden,* 268 F.2d 280, 300 (9th Cir.1959) ("[T]he failure of a jailor or keeper to release a prisoner held on a warrant or commitment cannot be the basis for a civil rights action regardless of

---

**3.** Patterson alleges in his brief that the parole board failed to investigate his wrongful conviction allegations in breach of a state law duty to do so. He thus claims that the district court failed to consider whether he could prove any set of facts in support of his claim. We disagree. This allegation does not appear in Patterson's initial complaint, and we consider it to be a wholly separate claim. Because this claim was not raised before the district court, we will not consider it on appeal. *See, e.g., Rogers v. Masem,* 788 F.2d 1288, 1292 (8th Cir.1985). Moreover, we note that to the extent such an allegation constitutes additional facts in support of his claim that he was wrongfully denied parole, it is barred by absolute immunity. There is no set of facts upon which Patterson is entitled to relief on that claim.

allegations of malice, motive or intent."), *overruled on other grounds, Cohen v. Norris,* 300 F.2d 24 (9th Cir.1962); *Ravenscroft v. Casey,* 139 F.2d 776, 778 (2d Cir.1944); *Rhodes v. Houston,* 202 F.Supp. 624, 636 (D.Neb.1962); *Langen v. Borkowski,* 188 Wis. 277, 206 N.W. 181 (1925); *Rush v. Buckley,* 100 Me. 322, 327, 61 A. 774 (1905); *Martin v. Collins,* 165 Mass. 256, 43 N.E. 91 (1896). We conclude that jailers were absolutely privileged at common law against actions alleging wrongful confinement.

Another line of cases supports the wardens' absolute immunity. Courts have consistently held that officials acting pursuant to a facially valid court order have a quasi-judicial absolute immunity from damages for actions taken to execute that order. *See, e.g., Rogers v. Bruntrager,* 841 F.2d 853 (8th Cir.1988) (court clerk); *Tymiak v. Omodt,* 676 F.2d 306, 308 (8th Cir.1982) (sheriff); *Valdez v. City & County of Denver,* 878 F.2d 1285, 1290 (10th Cir.1989) (sheriffs); *Coverdell v. Department of Social & Health Servs.,* 834 F.2d 758, 764–65 (9th Cir.1987); *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1238–40 (7th Cir.1986); *Tarter v. Hury,* 646 F.2d 1010, 1013 (5th Cir.1981) (court clerk); *Slotnick v. Garfinkle,* 632 F.2d 163, 166 (1st Cir.1980) (sheriff); *Kermit Constr. Corp. v. Banco Credito Y Ahorro Ponceno,* 547 F.2d 1, 3 (1st Cir.1976) (receiver); *Hazo v. Geltz,* 537 F.2d 747, 750 (3d Cir.1976) (official); *Waits v. McGowan,* 516 F.2d 203, 206 & n. 6 (3d Cir.1975) (police officers); *Fowler v. Alexander,* 478 F.2d 694, 696 (4th Cir.1973) (sheriff and jailor); *Lockhart v. Hoenstine,* 411 F.2d 455, 460 (3d Cir.), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969) (public official). Here, the wardens simply confined Patterson pursuant to a facially valid order of conviction.

We further believe that nothing counsels against absolute immunity for jailers in § 1983 actions alleging wrongful confinement. We recognize that the Supreme Court has stated that "[f]or executive officers in general ... qualified immunity represents the norm," *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982), and that state officers who "seek absolute exemption from personal liability for unconstitutional conduct must bear the burden of showing that public policy requires an exemption of that scope." *Butz v. Economou,* 438 U.S. 478, 506, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978). We also note that the Court has limited absolute immunity to those who make judgments " 'functionally comparab[le] to those of judges' " and who " 'exercise a discretionary judgment' as part of their function," *Antoine v. Byers & Anderson, Inc.,* —— U.S. ——, ——, 113 S.Ct. 2167, 2171, 124 L.Ed.2d 391 (1993) (citations omitted), and refused to extend such quasi-judicial immunity to a court reporter's failure to provide a requested transcript. *Id.* We conclude, however, that these wardens have proved that absolute immunity is necessary.

We need to be clear about what Patterson is claiming. Patterson in effect seeks to impose liability on these wardens if they knew or were reckless in not determining that his conviction was invalid. Three problems occur if we allow such suits to go forward at all.

First, because the judge and parole officers have absolute immunity, wardens are likely to be the focus of suits challenging the fact of confinement. Disgruntled prisoners have no one else to sue. If the wardens do not have absolute immunity from suits challenging the *fact* of a prisoner's confinement, they will become a " 'lightning rod for harassing litigation aimed at judicial orders.' " *See Valdez,* 878 F.2d at 1289 (quoting *T & W Inv. Co. v. Kurtz,* 588 F.2d 801, 802 (10th Cir.1978)).

Second, such liability is simply unfair. Whether or not the warden believes a prisoner's conviction to be invalid, he is still under a court order to confine the prisoner. The warden has no power to do anything to alleviate his liability. Wardens should not be required to make the Hobson's choice between disobeying the court order or being haled into court to answer for damages.

Finally, such suits present a serious threat to the integrity of the judicial process. As one court has noted, "[t]he fearless and unhesitating execution of court orders is necessary if the court's authority and ability to function are to remain uncompromised."

*Coverdell,* 834 F.2d at 765. This interest was not implicated in the Supreme Court's decision in *Antoine,* because an action challenging a court reporter's failure to provide a trial transcript does not undermine the court's orders or authority. The type of liability Patterson seeks to impose does undermine the court's authority, however. To avoid the type of liability Patterson seeks to impose, the warden would constantly have to question the validity of confinement orders. For the criminal justice system to function, however, officials must be able to rely on facially valid court orders, and courts must be able to assume their orders will be enforced. "Officials such as the [wardens] must not be required to act as pseudo-appellate courts scrutinizing the orders of judges." *Valdez,* 878 F.2d at 1289 (citing *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1239 (7th Cir.1986)). Absolute immunity is the only way to avoid placing prison wardens in that role.

 We note the limits of our holding. We simply conclude that a warden is absolutely immune from damages flowing from the *fact* of a prisoner's incarceration, when that incarceration occurs pursuant to a facially valid order of confinement. Thus, we hold the defendant wardens absolutely immune from Patterson's claims that the wardens failed to release him in light of his wrongful conviction claim.[4]

 Patterson further claims that the wardens breached a duty to investigate his wrongful conviction claims and to recommend that he be paroled on that basis. Unfortunately, Patterson does not provide us with the basis for that duty. We know of no federal constitutional duty requiring prison wardens to investigate such claims, and after diligent search have been unable to discover such a duty under Nebraska state law.

Therefore, we affirm the district court's dismissal of Patterson's failure to investigate claims.

### III. CONCLUSION

We affirm the order of the district court dismissing Patterson's claims in all respects.

---

4. Patterson also claims that the warden is liable for imprisoning him between the time when the magistrate judge recommended habeas relief be granted and when the district court actually granted habeas relief, a period of approximately seven months. This argument fails. Unless the parties consent to the magistrate judge entering final judgment in a habeas corpus action, the magistrate judge's report and recommendation does not constitute habeas corpus relief; a defendant's confinement is not invalid unless and until the district court accepts that report and recommendation and orders that habeas relief be granted. *Compare* 28 U.S.C. § 636(b) with § 636(c); *cf. Orsini v. Wallace,* 913 F.2d 474 (8th Cir.1990) (magistrate judge may enter final judgment in habeas corpus action *if* the parties consent). The warden had a right to rely on the order of conviction until the district court granted habeas corpus relief, and his knowledge of the report and recommendation is irrelevant.