Weston J. STOW

v.

David HORAN, et al.

Civil No. 91–300–JD.

United States District Court,
D. New Hampshire.

Aug. 16, 1993.

Weston J. Stow, pro se.

David Horan, Manchester, NH, William C. McCallum, Concord, NH, for defendants.

## ORDER

DiCLERICO, Chief Judge.

Pro se plaintiff Weston Stow has filed this action against defendants Hillsborough County House of Corrections Warden James O'Mara and Assistant Hillsborough County Attorney David Horan pursuant to 42 U.S.C.A. § 1983 (West 1981).[1] The plaintiff alleges the defendants violated his rights under the Interstate Agreement on Detainers ("IAD"), N.H.Rev.Stat.Ann. ("RSA") § 606–A *et seq.* (1986), and under the First, Fifth and Fourteenth Amendments by declining to transfer him to Massachusetts during the pendency of his appeal from his conviction in the Hillsborough County Superior Court. On February 13, 1992, the court ordered the complaint to be amended to add New Hampshire State Prison Warden Michael Cunningham as a defendant. The plaintiff made the following allegations against Cunningham:

> Concerning Warden Cunningham, I have written him and have made him aware that I am being held in [the New Hampshire State Prison] illegally, and have told him of my desire to be transferred back to Mass[achusetts], as is my legal right at this point in time.

> The acts of Warden Cunningham in that he refused to send me back to Mass[achusetts] (MCI–Gardner) after I made him aware of the IAD statutes violated my due process rights under the First, Fourth, Fifth, and Fourteenth Amendments of the [United States] Const[itution].

September 28, 1991 Amended Complaint at 3.[2]

Cunningham seeks dismissal of the claims against him pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, summary judgment

---

1. The statute provides, in relevant part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.A. § 1983 (West 1981).

2. The plaintiff also alleges O'Mara and Horan violated his rights when they transferred him to the New Hampshire State Prison for approximately one month before he was formally sentenced to the State Prison. The plaintiff, however, did not raise this claim against defendant Cunningham. This order therefore does not address this claim.

pursuant to Fed.R.Civ.P. 56. On July 8, 1993, the court notified the parties that on the issues of absolute and qualified immunity, it would treat Cunningham's motion as one for summary judgment pursuant to Fed. R.Civ.P. 56 and gave the parties until August 1, 1993 to present all pertinent material. The plaintiff filed an objection to Cunningham's motion and a cross-motion for summary judgment. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

### Background

The material facts in this action are not in dispute. The plaintiff was brought to New Hampshire under the terms of the IAD on September 7, 1990 to stand trial for charges of felonious sexual assault and kidnapping. The incident which gave rise to these charges occurred in Nashua, New Hampshire on July 22 and 23, 1988, when the plaintiff was a Massachusetts parolee. Shortly thereafter, Massachusetts authorities arrested the plaintiff and returned him to Massachusetts to stand trial on entirely separate criminal charges of lewd and lascivious behavior stemming from an incident on July 20, 1988. The plaintiff eventually plead guilty to the Massachusetts charges and was sentenced to a term of imprisonment.

While incarcerated in Massachusetts, the plaintiff repeatedly declined the State of New Hampshire's request to return for trial on the New Hampshire charges. New Hampshire authorities thus began formal extradition proceedings which culminated in the plaintiff's return to New Hampshire. Following a jury trial in the Hillsborough County Superior Court in December 1990, the plaintiff was found guilty and sentenced to forty to eighty years in the State Prison.

The plaintiff appealed his conviction to the New Hampshire Supreme Court. The court affirmed his conviction on February 12, 1993. *See State v. Stow,* 136 N.H. 598, 620 A.2d 1023 (1993). After the court affirmed the plaintiff's conviction, New Hampshire authorities transferred the plaintiff to Massachusetts to serve the remainder of his sentence there.

During the pendency of his appeal to the New Hampshire Supreme Court, the plaintiff requested transfer to Massachusetts, but Hillsborough County authorities declined to transfer him. They refused to do so because, in a 1991 habeas corpus action in the Hillsborough County Superior Court, the plaintiff asserted that if the New Hampshire Supreme Court overturned his conviction, he intended to have the New Hampshire indictments dismissed with prejudice under the IAD's anti-shuttling provision [3] once he had been sent to Massachusetts. *See* Defendant's Motion, Exhibit B, at 2. The Hillsborough County Superior Court denied this request, indicating "that since the Petitioner's conviction is under appeal, under RSA 606-A:1, Article V(d) and (e), the prosecution of the charges has not been completed, and the Petitioner need not be returned to the State of Massachusetts until the matter is finally resolved." *See id.* at 1-2. The New Hampshire Supreme Court summarily affirmed the Superior Court's denial of the petition, stating "no substantial question of law [was] presented by the appeal, and the court does not disagree with the result below." *See* Defendant's Motion, Exhibit D. The plaintiff then filed the present action in the United States District Court for the District of New Hampshire.

### Discussion

Cunningham sets forth various arguments, including the defenses of absolute and qualified immunity, supporting a grant of summary judgment in his favor. The United

---

**3.** The anti-shuttling provision provides:

> If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information or com-

plaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

N.H.Rev.Stat.Ann. § 606:A-1, Article IV(e) (1986).

States Supreme Court has indicated that "[f]or executive officers in general ... qualified immunity represents the norm," *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982), and that state officers who "seek absolute exemption from personal liability for unconstitutional conduct must bear the burden of showing that public policy requires an exemption of that scope." *Butz v. Economou,* 438 U.S. 478, 506, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978); *see also Patterson v. von Riesen,* 999 F.2d 1235, 1240 (8th Cir.1993). Absolute immunity is limited to those who make judgments " 'functional[ly] comparab[le]' to those of judges" and who " 'exercise a discretionary judgment' as part of their function." *Antoine v. Byers & Anderson, Inc.,* —— U.S. ——, ——, 113 S.Ct. 2167, 2171, 124 L.Ed.2d 391 (1993) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 423 n. 20, 96 S.Ct. 984, 991 n. 20, 47 L.Ed.2d 128 (1976)). For example, the *Antoine* Court refused to extend absolute immunity to protect a court reporter's failure to provide a requested transcript. *See id.* —— U.S. at ——, 113 S.Ct. at 2172. In the present action, however, the court finds Cunningham has shown he is entitled to absolute immunity.

The court's analysis of whether an official is entitled to absolute immunity is in two steps. The court must first consider "whether an official claiming immunity under § 1983 can point to a common-law counterpart to the privilege he asserts." *Malley v. Briggs,* 475 U.S. 335, 339–40, 106 S.Ct. 1092, 1095–96, 89 L.Ed.2d 271 (1986); *see also Patterson,* 999 F.2d 1235, 1239. "If 'an official was accorded immunity from tort actions at common law when the Civil Rights Act was enacted in 1871, the [c]ourt next considers whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions.' " *Malley,* 475 U.S. at 340, 106 S.Ct. at 1095 (quoting *Tower v. Glover,* 467 U.S. 914, 920, 104 S.Ct. 2820, 2824, 81 L.Ed.2d 758 (1984)); *see also Patterson,* 999 F.2d 1235, 1239.

The court first finds that at common law, wardens were absolutely immune from suits for damages for confining a prisoner pursuant to a valid court order. *Patterson,* 999 F.2d 1235, 1239. A warden's privilege to hold a particular prisoner pursuant to a judicial process regular on its face and issued by a court of competent jurisdiction is "quite as time-honored in the Anglo–American common law as is the immunity of members of the legislature and of judges from civil liability for acts done within the sphere of their judicial activities." *Francis v. Lyman,* 216 F.2d 583, 588–89 (1st Cir.1954).[4]

Second, the court finds nothing in § 1983's history or purposes counsels against absolute immunity for Cunningham under the circumstances of this case. *See Patterson,* 999 F.2d 1235, 1240. The court emphasizes the plaintiff is claiming, in essence, that Cunningham should be held liable for following the September 23, 1991 order of the Superior Court. Allowing the plaintiff to pursue this claim, however, would create several problems.

> First, because the judge ... ha[s] absolute immunity, wardens are likely to be the focus of suits challenging the fact of confinement. Disgruntled prisoners have no one else to sue. If the wardens do not have absolute immunity from suits challenging the fact of a prisoner's confinement, they will become a lightning rod for harassing litigation aimed at judicial orders.

*Id.* (citations omitted). Second, the court believes holding Cunningham liable in these circumstances would be unfair. He had no choice but to enforce the court's order to keep the plaintiff in the State Prison. "Wardens should not be required to make the Hobson's choice between disobeying the court order or being haled into court to answer for damages." *Id.*

Finally, the court is of the opinion that allowing suits such as this one threatens the integrity of the judicial process. *See id.* "The fearless and unhesitating execution of court orders is necessary if the court's au-

---

4. In *Patterson v. von Riesen,* the United States Court of Appeals for the Eighth Circuit noted that "[c]ourts have consistently held that officials acting pursuant to a facially valid court order have a quasi-judicial absolute immunity from damages for actions taken to execute that order." *See* 999 F.2d 1235, 1240 (8th Cir.1993) (citing cases).

thority and ability to function are to remain uncompromised." *Coverdell v. Department of Social & Health Servs.*, 834 F.2d 758, 765 (9th Cir.1987).

This interest was not implicated in the Supreme Court's decision in *Antoine*, because an action challenging a court reporter's failure to provide a trial transcript does not undermine the court's orders or authority.

The type of liability [the prisoner] seeks to impose [in the present action] does undermine the court's authority, however. To avoid the type of liability [the prisoner] seeks to impose, the warden would constantly have to question the validity of confinement orders. For the criminal justice system to function, however, officials must be able to rely on facially valid court orders, and courts must be able to assume their orders will be enforced. "Officials such as the [warden] must not be required to act as pseudo-appellate courts scrutinizing the orders of judges." *Valdez [v. City and County of Denver]*, 878 F.2d [1285], 1289 (10th Cir.1989) (citing *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir.1986)). Absolute immunity is the only way to avoid placing prison wardens in that role.

*Patterson*, 999 F.2d 1235, 1241.

In view of this analysis, the court finds Cunningham is entitled to absolute immunity from the plaintiff's claims and, therefore, grants summary judgment in his favor.

### Conclusion

For the foregoing reasons, the court grants Defendant Michael Cunningham's Motion to Dismiss Plaintiff's Complaint (document no. 102) and denies the Objection to State[']s Motion for Summary Judgment and Plaintiff[']s Cross Motion for Summary Judgment (document no. 112).

The court believes the issues against the remaining defendants may be susceptible to resolution by summary judgment. Accordingly, the parties are ordered to file cross-motions for summary judgment by September 13, 1993; responses to these motions shall be filed by September 27, 1993.

SO ORDERED.

