USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  __________________ No. 93-1579 GORDON C. REID, Plaintiff, Appellant, v. STATE OF NEW HAMPSHIRE, ET AL., Defendants, Appellees.  __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Steven J. McAuliffe, U.S. District Judge] ___________________  __________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________  __________________ Gordon C. Reid on brief pro se. ______________ Robert G. Whaland, William A. Grimes and McDonough & ___________________ ___________________ ____________ O'Shaughnessy on brief for appellee. _____________ Carolyn M. Kirby, Assistant County Attorney, on Motion for _________________ Summary Affirmance for appellee.  __________________ June 6, 1995  __________________ CYR, Circuit Judge. After a New Hampshire court CYR, Circuit Judge ______________ set aside his convictions on two charges of felonious sexual assault against a child, pro se plaintiff Gordon C. Reid ___ __ initiated this civil rights action for compensatory and punitive damages against, inter alia, Hillsborough County _____ ____ prosecutors Marguerite Wageling and Paul McDonough, Manches- ter police officers Gary Simmons, Ronald Paul, James Ahern and Richard Gilman, and defense attorney Richard Renfro. The district court dismissed all claims, and Reid appealed.  For the reasons hereinafter discussed, we affirm the district court order dismissing the claims against prose- cutors Wageling and McDonough, as well as the claim that Renfro conspired with the prosecutors to conceal exculpatory evidence from Reid. We vacate the order dismissing the false arrest and malicious prosecution claims against the police defendants and the due process claim alleging that the police defendants intentionally concealed exculpatory impeachment evidence from the prosecutors.  I I BACKGROUND BACKGROUND __________ A. The State Court Proceedings A. The State Court Proceedings ___________________________ Reid was arrested, without a warrant, on June 21, 1986, and charged with three counts of felonious sexual 2 assault upon a six-year-old girl, Misty ("Misty").1 ______ He was incarcerated immediately upon arrest. Manchester Police Sergeant Gary Simmons testified at the probable cause hearing ultimately held on August 22, 1986, and Reid was bound over for trial. Between September 9, 1986 and June 24, 1987, with assistance from stand-by counsel, Reid filed five successful motions to compel disclosure of exculpatory evi- dence.  Reid represented himself at trial, personally cross-examining the State's witnesses, including Misty, with assistance from stand-by counsel. After the jury acquitted Reid on one count, he moved to set aside his convictions on the two remaining counts.  Sometime in September 1988, in response to a fur- ther motion to disclose exculpatory evidence, the State produced documents tending to undermine the credibility of Misty, her sister Wendy, and their mother. Among the docu- ments were Manchester Police Department reports, dated Decem- ber 20, 1985 ("1985 Report") and April 4, 1986 ("1986 Re- port"), prepared by Sergeant Simmons, containing questionable accounts of previous sexual assaults allegedly made against  ____________________ 1The arrest was made pursuant to New Hampshire Rev. Stat. Ann. 594:10(II)(b), which provides that "[a]n arrest by a peace officer without a warrant on a charge of a felony is lawful whenever: ... The officer has reasonable ground to believe that the person arrested has committed a felony." The New Hampshire courts interpret "reasonable ground" as the substantial equiva- lent of "probable cause." See State v. Vachon, 533 A.2d 384, 386 ___ _____ ______ (N.H. 1987). 3 Misty by other individuals.2 Reid also was provided with a New Hampshire Department of Children & Youth Services ("DC- YS") file on Misty and her family, which included reports that Misty's mother had beaten and bruised Misty and engaged in sexual intercourse with her boyfriend in front of Misty. These allegations originated, in part, with Misty's sister, Wendy. It further revealed that Misty's mother had charac- terized Wendy's allegations as lies prompted by Wendy's drug use and desire to move in with her boyfriend when Wendy was only sixteen years old. The DCYS file also described aber- rant sexual behavior by Misty herself, at age six, such as performing fellatio on another child.3 Reid was released on bail while the superior court conducted a "nonevidentiary hearing" on the motion to set aside his convictions. The court concluded that the police reports of prior sexual assaults constituted exculpatory impeachment evidence which gave rise to a reasonable prob- ability that the outcome of Reid's trial would have been different had the evidence been disclosed to the trial court, since it directly undermined the testimony of Misty and her  ____________________ 2On their face, the reports do not indicate that Misty falsely accused anyone. The 1985 report indicates that Misty had been sexually abused by a person or persons unknown. The 1986 report states that Misty denied allegations made by a neighbor, ______ who complained that Misty had been sexually abused by a man referred to simply as "George."  3It is not clear whether the DCYS file was before the state court.  -4- 4 mother. Under the New Hampshire Rape Shield Law, Rev. Stat. Ann. 632-A:6, "a defendant must be afforded the opportunity to show, by specific incidents of sexual conduct, that the prosecutrix has the experience and ability to contrive a statutory rape charge against him." State v. Howard, 121 _____ ______ N.H. 53, 61 (1981). On October 5, 1988, the superior court set the two remaining convictions aside and ordered a new trial. In December 1988, all charges against Reid were dropped.  B. The Federal District Court Proceedings B. The Federal District Court Proceedings ______________________________________ (i) The Original Complaint (i) The Original Complaint ______________________ The original civil rights complaint in federal district court alleged that between the date of arrest, June 1986, and the date his convictions were set aside, October 1988, prosecutors Wageling and McDonough caused Reid to be deprived of his liberty without probable cause in violation of the Fourth Amendment. It alleged that the prosecutors, by withholding the exculpatory evidence, violated Reid's rights to due process, a fair trial, equal protection of the laws, and to confront and obtain witnesses. Reid further alleged that he was arrested by Manchester Police Sergeant Gary Simmons on the basis of unreliable information and that Simmons continuously withheld exculpatory evidence between June 1986 and October 1988. Finally, he alleged that Richard Renfro, Esquire, deprived Reid of his Sixth Amendment right -5- 5 to the effective assistance of counsel by failing to prepare the case adequately for trial.  On June 19, 1989, a United States magistrate judge recommended that all but one claim be dismissed.4 The re- port and recommendation noted that prosecutors Wageling and McDonough were absolutely immune from suit under Imbler v. ______ Pachtman, 424 U.S. 409 (1976), and that Reid had failed to ________ allege the requisite state action to sustain a claim against defense counsel Renfro under Polk County v. Dodson, 454 U.S. ___________ ______ 312, 320-21 (1981).  (ii) The First Amended Complaint (ii) The First Amended Complaint ___________________________ Reid filed an amended pro se complaint, alleging ___ __ federal and state civil rights violations and adding Manches- ter Police defendants Gilman, Ahern and Paul. It alleged that the police defendants arrested Reid on the basis of unreliable information, in violation of the Fourth Amendment, and deliberately suppressed exculpatory evidence from the time of his arrest until after his trial, in violation of his right to equal protection, the effective assistance of coun- sel, a fair trial, due process, and the right to confront and obtain witnesses. The first amended complaint also alleged that prosecutors Wageling and McDonough had instructed their codefendants in the present civil rights action, and the  ____________________ 4The magistrate judge recommended that Reid be permitted to submit further documentation on the claim against Sergeant Simmons. -6- 6 witnesses at Reid's criminal trial, not to mention the police reports on prior sexual assault complaints relating to Misty, thereby prompting these codefendants to respond falsely to inquiries concerning the withheld evidence both before and during the criminal trial. See Hilliard v. Williams, 465 ___ ________ ________ F.2d 1212, 1215 (6th Cir. 1972), rev'd, 540 F.2d 220, 221 _____ (6th Cir. 1976) (per curiam). The first amended complaint reiterated Reid's allegation that the prosecutors deliber- ately withheld the exculpatory evidence before, during, and for fourteen months after Reid's criminal trial, resulting in his unlawful conviction and imprisonment. Finally, it al- leged that the defendant officers and prosecutors had con- spired to deprive Reid of his constitutional rights.  The magistrate judge issued a Further Report and Recommendation on February 6, 1990, which concluded that the first amended complaint stated an actionable Fourth Amendment claim for false arrest against the police defendants and that Reid's motion to add police defendants Gilman, Ahern and Paul should be allowed. Citing Imbler, 424 U.S. at 430, the ______ magistrate judge concluded, nonetheless, that the claims against prosecutors Wageling and McDonough were barred by absolute prosecutorial immunity. Finally, the report recom- mended that the claim against Attorney Renfro be dismissed.  On March 22, 1991, the district court adopted the Further Report and Recommendation, effectively dismissing -7- 7 prosecutors Wageling and McDonough, and defense counsel Renfro, as defendants.5 (iii) The Third Amended Complaint6  (iii) The Third Amended Complaint6 ____________________________ On June 10, 1992, following further discovery, Reid requested leave to file the third amended complaint, reas- serting all claims against the prosecutors, adding a conspir- acy claim against Renfro, and naming additional police and prosecutor defendants. The third amended complaint further particularized the claims against the police defendants, asserting that their failure to disclose exculpatory evidence constituted actionable malicious prosecution and violated Reid's constitutional rights. In contrast to the first amended complaint, which indicated that the prosecutors knew about the exculpatory evidence but instructed the police and others to conceal it, Reid's third amended complaint, liber- ally construed, see Estelle v. Gamble, 429 U.S. 97, 106 ___ _______ ______ (1976), asserted that the police defendants knew the police ___ ______ __________ ____ ___ ______ reports and the DCYS file existed, but concealed them from _______ ___ ___ ____ ____ _______ ___ _________ ____ ____ the prosecutors for almost two years, between June 1986 and ___ ___________ ___ ______ ___ _____ August 1988. Thus, the third amended complaint restated Reid's previous allegations against the police defendants and  ____________________ 5Reid and the police defendants objected to the Further Report and Recommendation. Although Reid did not object to dismissal of the claim against Renfro, he reserved the right to amend it following discovery. 6A second amended complaint, naming a former New Hampshire governor as a defendant, was dismissed by the district court. -8- 8 pleaded distinct claims for negligence, false arrest, mali- cious prosecution, wrongful withholding of exculpatory evi- dence, and conspiracy. As for the prosecutors and Attorney Renfro, the third amended complaint alleged, in the alternative, that the prosecutors knew of the exculpatory evidence but failed to disclose the information to Renfro, or that the prosecutors __ disclosed the exculpatory information to Renfro but enlisted him in their conspiracy to conceal the exculpatory informa- tion from Reid. We turn to the various claims raised on appeal.   II II DISCUSSION DISCUSSION __________ A. The Claims Against the Prosecutors A. The Claims Against the Prosecutors __________________________________ Reid contends that the district court erred in dismissing his claims against prosecutors Wageling and McDonough. He argues that Imbler "absolute immunity" should ______ not extend to claims for withholding exculpatory evidence in direct violation of trial court orders, where it is alleged that the prosecutors repeatedly misled the trial court itself throughout the criminal proceedings. Reid claims that the disclosure orders issued by the trial court displaced whatev- er discretion the prosecutors may have had concerning disclo- sure of exculpatory evidence, consequently their failure to -9- 9 disclose was not a prosecutorial function at all, but merely ministerial. Finally, he contends that the prosecutors repeatedly lied to the trial court about the existence of the exculpatory evidence, whereas in Imbler the prosecutor volun- ______ tarily disclosed the evidence shortly after learning of it. The district court dismissed the claims against the prosecutors as frivolous under 28 U.S.C. 1915(d). We review only for abuse of discretion, see Watson v. Caton, 984 ___ ______ _____ F.2d 537, 539 (1st Cir. 1993), and find none.7  First, Reid alleged no facts suggesting that the prosecutors had anything to do with the arrest. The com- plaint therefore failed to state an actionable false arrest claim.8  Second, under Imbler "it is 'now [a] well-settled ______ rule that a prosecutor cannot be held personally liable for the knowing suppression of exculpatory information.'" Robin- ______  ____________________ 7Although the magistrate judge recommended that the claims against the prosecutors be dismissed for "fail[ing] to state a cause of action" language strongly suggesting a Rule 12(b)(6) dismissal Reid was given notice of the deficiencies and a full opportunity to amend the complaint. Thus, dismissal under 28 U.S.C. 1915(d) was proper. See Purvis v. Ponte, 929 F.2d 822, ___ ______ _____ 826-27 (1st Cir. 1991).  8As New Hampshire recognizes the torts of false arrest and malicious prosecution, see Stock v. Byers, 424 A.2d 1122, 1123 ___ _____ _____ (N.H. 1980), those claims should have been analyzed under state law, rather than 1983. Given an adequate state-law remedy for a procedural due process violation, no 1983 claim lies. Perez- ______ Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994); Smith v. ____ ______________ _____ Massachusetts Dep't. of Correction, 936 F.2d 1390, 1402 (1st Cir. __________________________________ 1991); Torres v. Superintendent of Police, 893 F.2d 404, 410 (1st ______ ________________________ Cir. 1990).  -10- 10 son v. Volkswagenwerk AG, 940 F.2d 1369, 1372-73 (10th Cir. ___ _________________ 1991) (citation omitted), cert. denied, 502 U.S. 1091 (1992); _____ ______ Myers v. Morris, 810 F.2d 1437, 1446 (8th Cir.), cert. de- _____ ______ _____ ___ nied, 484 U.S. 828 (1987).9 See Campbell v. Maine, 787 F.2d ____ ___ ________ _____ 776, 777 (1st Cir. 1986) (per curiam); Hilliard v. Williams, ________ ________ 540 F.2d 220, 221-22 (6th Cir. 1976) (per curiam). The Imbler rule has been applied where prosecutors failed to ______ disclose exculpatory evidence specifically requested by the defense, see Jones v. Shankland, 800 F.2d 77, 78-80 (6th Cir. ___ _____ _________ 1986), cert. denied, 481 U.S. 1048 (1987), and where prosecu- _____ ______ tors misled the trial court in order to conceal their failure to disclose exculpatory evidence, see Wilkinson v. Ellis, 484 ___ _________ _____ F. Supp. 1072, 1082 (E.D. Pa. 1980).  Thus, we think the trial court discovery orders did not displace Imbler immunity. In the first place, it is in- ______ accurate to assert, as Reid does, that there was no prosecu- torial discretion left to be exercised respecting the dis- closure of this evidence. On the contrary, the disclosure orders were issued in response to motions for "any 'excul- patory' evidence which could assist [Reid] in the preparation and presentation of his defense," broad language indicating a general request for Brady material. The orders accordingly _____  ____________________ 9As New Hampshire law apparently affords no remedy for withholding exculpatory evidence, this claim is subject to 1983 analysis. See also Belcher v. Paine, 612 A.2d 1318, 1322-23 ___ ____ _______ _____ (N.H. 1992) (applying Imbler doctrine to malicious prosecution ______ claim under state law.) -11- 11 left the prosecutors with something more than a ministerial function to perform. The prosecutors were required to deter- mine what evidence in their possession was "exculpatory" and subject to disclosure.10 Cf. Buckley v. Fitzsimmons,  ___ _______ ___________ ____ U.S. , 113 S. Ct. 2606, 2616 (1993) (when prosecutor _____ evaluates evidence and interviews witnesses in preparation for trial, he functions within the scope of absolute immun- ity). Imbler expressly recognized that requiring prosecutors ______ to defend in section 1983 actions decisions concerning the "materiality of evidence not revealed to the defense could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials." Imbler, 424 U.S. at 425-26. The view expressed in the Imbler ______ ______  ____________________ 10We recognize that N.H. Rev. Stat. Ann. 631-A:6, on its face, bans evidence of prior sexual activity by a prosecutrix in a rape case: "Prior consensual sexual activity between the victim and any person other than the actor shall not be admitted into evidence in any prosecution under this chapter." However, the New Hampshire Supreme Court has read a constitutional limita- tion into this statutory ban in statutory rape cases, so as to preserve the statute from infirmity to constitutional attack. Howard, 121 N.H. at 61 (state constitution requires that the jury ______ be informed of prior sexual experience of child prosecutrix in statutory rape case, since jury otherwise could infer that the prosecutrix must have gained her knowledge of sexual anatomy only through the alleged sexual assault). Whether and when to admit such evidence rests within the discretion of the trial court. State v. Cox, 575 A.2d 1320, 1322-23 (N.H. 1990) (upholding trial _____ ___ court's exercise of discretion admitting Howard-type evidence ______ only during cross-examination of prosecutrix). Thus, these prosecutors retained some discretion, at least, in evaluating ____ whether the putative prior attacks against Misty constituted Brady evidence. We do not suggest, of course, that the prosecu- _____ tors were free to disregard the state court disclosure order, nor that there were no alternative means of avoiding a violation, as by submitting the evidence for in camera review. __ ______ -12- 12 dissent that absolute immunity should attach only if the prosecutor has disclosed all facts which cast doubt on the State's evidence was rejected by the Imbler Court because ______ such a requirement would interfere "with the legitimate __________ exercise of prosecutorial discretion." Id. at 432. Imbler ________ __ _____________ __________ ___ ______ thus implicitly acknowledged that prosecutors retain discre- _______ tion to determine what evidence is to be disclosed under ____ Brady and that absolute immunity attaches to their exercise _____ of discretion.  The further allegation that these prosecutors re- peatedly misled the trial court in order to conceal their alleged misconduct does not defeat absolute immunity. In Burns v. Reed, 500 U.S. 478, 489-90, 111 S. Ct. 1934, 1941 _____ ____ (1991), the Court sustained absolute prosecutorial immunity for "making false or defamatory statements in judicial pro- ceedings (at least so long as the statements were related to the proceeding), and also for eliciting false and defamatory testimony from witnesses." Imbler stated that it is "'better ______ to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the con- __ _____ ____ stant dread of retaliation.'" See Imbler, 424 U.S. at 428 ___ ______ (quoting Gregoire v. Biddle, 177 F.2d 579, 581 (2nd Cir. ________ ______ 1949), cert. denied, 339 U.S. 949 (1950)).11  _____ ______  ____________________ 11Reid counters with Martinez v. Winner, 771 F.2d 424 (10th ________ ______ Cir. 1985) (holding that prosecutor is not entitled to absolute immunity for filing false affidavit in bar disciplinary proceed- -13- 13 Nor was absolute immunity forfeited because the prosecutors continued to withhold the exculpatory evidence long after Reid's conviction.12 Imbler specifically noted ______ that absolute prosecutorial immunity is an essential guaran- tee that reviewing courts focus exclusively on the fairness of the underlying trial, not upon any collateral consequences a reversal might portend for the prosecutor. Id. at 427; cf. ___ ___ Patterson v. Von Riesen, 999 F.2d 1235, 1238 (8th Cir. 1993) _________ __________ ("The Supreme Court has created no requirement that prosecu- tors reveal their trial mistakes to maintain their absolute immunity . . . .").13   ____________________ ing to cover up trial misconduct), and Briggs v. Goodwin, 569 ______ _______ F.2d 10 (D.C. Cir. 1977), cert. denied, 437 U.S. 904 (1978) _____ ______ (holding prosecutor not entitled to absolute immunity for alleg- edly perjuring himself during grand jury proceedings, since prosecutor was then acting in investigative capacity). These cases are inapposite, as they involved prosecutors who were not acting as advocates for the State. Moreover, Martinez was reversed, see ________ ___ Martinez, 778 F.2d 553, 555-56 (10th Cir. 1985), as to the point ________ relied on by Reid, vacated by the Court, Tyus v. Martinez, 475 ____ ________ U.S. 1138 (1986), and later dismissed as moot, Martinez, 800 F.2d ________ 230 (10th Cir. 1986). Finally, Briggs is no longer viable in ______ light of Briscoe v. LaHue, 460 U.S. 325 (1983) (all witnesses, _______ _____ including those who give perjured testimony, are absolutely immune from civil suit under 1983). See Briggs v. Goodwin, 712 ___ ______ _______ F.2d 1444 (D.C. Cir. 1983), cert. denied, 464 U.S. 1040 (1984) _____ ______ (prosecutor who gives perjured testimony is entitled to absolute immunity under Briscoe but not Imbler).  _______ ______ 12The first amended complaint alleged that these prosecu- tors, unlike the prosecutor in Imbler, did not disgorge the ______ exculpatory evidence until more than a year after Reid was convicted.  13We also reject the contention that their conduct following Reid's conviction is actionable under Houston v. Partee, 758 F. _______ ______ Supp. 1228, 1230-31 (N.D. Ill. 1991) (holding that prosecutors -14- 14 Reid further contends that the district court failed to address his claim against the prosecutors in their official capacities. In order to prevail on an "official ________ __________ capacity" claim, Reid would have to show that the particular governmental entity had an unconstitutional custom or policy, Monell v. New York City Dep't. of Social Servs., 436 U.S. ______ ________________________________________ 658, 690 (1978), which its representatives were executing with at least the tacit approval of governmental policy- makers. Id. at 691 ("customs and usages" of local government ___ may satisfy Monell requirement). Reid insists that he plead- ______ ed actionable claims against the County Prosecutor's office and the County of Hillsborough by alleging that the defendant prosecutors, themselves policymaking officials, continuously refused to produce the exculpatory evidence the court ordered  ____________________ are not entitled to absolute immunity for suppressing exculpatory evidence first acquired after 1983 plaintiffs' murder convic- _____ ________ _____ tions), aff'd, 978 F.2d 362 (7th Cir. 1992), cert. denied, 113 S. _____ _____ ______ Ct. 1647 (1993). The Houston plaintiffs were convicted of _______ shooting a gang member. While their appeals were pending, another gang member, in the context of a different investigation, informed the prosecutor as to the identities of the actual killers.Theprosecutor, nolongerrepresentingtheState inplaintiffs' criminal appeals, did not disclose this information to defense counsel. A few years after the convictions were affirmed on appeal, the real killers confessed. The three prosecutors who had been aware of the evidence neither disclosed it to defense counsel nor to the court, and plaintiffs were unjustly imprisoned for several more years.  Houston stressed that absolute immunity did not attach to _______ the prosecutors' conduct because they acquired the evidence in their investigative capacity, at a time when they were not _____________ ________ representing the State in the post-conviction proceedings. See ___ 978 F.2d at 366-67. Reid has not alleged that these prosecutors did not represent the State after his conviction. Indeed, the record suggests otherwise.  -15- 15 disclosed. We do not reach the question whether Reid alleged the requisite custom or practice under Monell, since ______ he has not challenged the magistrate-judge's report and recommendation on this basis. See Henley Drilling Co. v. ___ ____________________ McGee, 36 F.3d 143, 150 (1st Cir. 1994) (citing Park Motor _____ __________ Mart Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. _________ _______________ 1980) ("A party may file objections within ten days or he may not, as he chooses, but he shall do so if he wishes further appellate consideration.")). Accordingly, all claims against the prosecutors were properly dismissed. B. The Claims Against the Police Officers B. The Claims Against the Police Officers ______________________________________ After the false arrest claims were allowed to proceed, the police defendants contended that the district court had dismissed, as frivolous, the claim that the police deprived Reid of due process of law and a fair trial by concealing exculpatory evidence. Unable to obtain clarifica- tion of the district court dismissal order, Reid pursued further discovery in an attempt to establish each police defendant's awareness of the exculpatory evidence and wheth- er, and when, the officers had disclosed what they knew to one another and to the prosecutors. The district court ultimately permitted the third amended complaint, including the false arrest claims and the concealment claims, to be filed against the police defendants.  (i) The Third Amended Complaint (i) The Third Amended Complaint ___________________________ -16- 16 On February 14, 1992, the magistrate judge ordered the police defendants to respond to Reid's interrogatories and requests for production of documents. On June 10, Reid filed a motion to compel further responses to interrogato- ries, followed by motions to join additional defendants and for permission to file the third amended complaint alleging, inter alia, that the police defendants conspired with the _____ ____ prosecutors to conceal the exculpatory evidence. There fol- lowed, in July 1992, another motion to compel production.  Prior to any disposition of Reid's June 10 motions to compel responses to interrogatories and for leave to file the third amended complaint, the police defendants moved for summary judgment on qualified immunity grounds based on their contention that other evidence in their possession was suffi- cient to establish probable cause for Reid's arrest even assuming they had withheld the exculpatory evidence. In addition, Sergeant Simmons submitted an affidavit denying that he had withheld police reports relating to Misty. On August 27, 1992, Reid requested further time to respond to the police defendants' motion for summary judgment, because he was unable to do so until the district court ruled on his discovery requests.14   ____________________ 14Although Sergeant Simmons made reference to earlier police reports relating to Misty, he did not mention the DCYS file. Nor is it clear whether the police defendants were privy to its contents prior to Reid's arrest or conviction. -17- 17 In November, 1992, the case was transferred from Rhode Island to New Hampshire and reassigned to a different district judge. On December 14, the newly assigned judge allowed Reid until January 11, 1993, to respond to the police defendants' motion for summary judgment. At the same time, the court directed that Reid's motions to compel discovery and to substitute the third amended complaint be considered "withdrawn" from the docket, without prejudice to their renewal by January 4, 1993. Reid renewed each motion within the deadline and again sought additional time to respond to the motion for summary judgment. On January 22, 1993, the district court allowed Reid seven days to respond in writing to the motion for summary judgment. The court denied Reid's motion to substi- tute the third amended complaint insofar as it would add claims against prosecutors Wageling and McDonough for mali- cious prosecution, denial of due process of law and false imprisonment caused by the failure to disclose the exculpato- ry evidence, and against Attorney Renfro for conspiring with the prosecutors to conceal the exculpatory evidence from Reid. At the same time, the court allowed an amendment adding a separate malicious prosecution claim against all police defendants and restating the claim that the police defendants had violated Reid's constitutional rights by con- tinuously withholding the exculpatory evidence. Lastly, the -18- 18 district court rejected Reid's motion to compel further discovery under Fed. R. Civ. P. 56(f), on the ground that the discovery sought was not substantially related to the police defendants' qualified immunity claims.  On February 5, 1993, the district court granted summary judgment for all police defendants. Relying primari- ly on reports of the police investigation preceding Reid's arrest, the court reasoned that the police defendants were entitled to qualified immunity because an objectively reason- able police officer, based on all the evidence, including the exculpatory information withheld until August of 1988, none- theless could have believed that there was probable cause to arrest Reid for sexually assaulting Misty, even assuming the police defendants concealed the exculpatory evidence.15 The district court did not mention the malicious prosecution claims relating to the alleged failure of the police defen- dants to disclose the exculpatory evidence, but concluded that "when probable cause exists notwithstanding the exis- tence of some exculpatory evidence, no violation of the Fourth Amendment occurs and the shield of qualified immunity _________ ________  ____________________ 15The district court did not have the exculpatory evidence when it ruled on either the motion for summary judgment or the motion for reconsideration. Those materials were in the district court, however, for a single day February 10 after summary _____ judgment had been entered against Reid and before the motion for ______ reconsideration was filed. Nor did the court have the opportuni- ty to consider Reid's pro se memorandum in opposition to summary judgment before granting summary judgment against him, though it did so prior to ruling on the motion for reconsideration.  -19- 19 remains viable." (emphasis added). Final judgment was en- tered dismissing all claims against the police defendants on February 8.  On February 10, the district court clerk received and docketed Reid's timely opposition to the motion for ______ summary judgment, together with his supporting affidavit, exhibits, memorandum, and statement of contested and unc- ontested facts.16 The supporting materials included the 1985 and 1986 police reports, which recorded prior complaints of sexual assaults against Misty, as well as portions of the DCYS reports describing relevant family history.  The DCYS reports described how Misty and her sis- ter, Wendy, had been physically abused by their mother. The allegations were made by Wendy, and by a former roommate of _____ Misty's mother. The reports related that Misty's mother engaged in sexual intercourse in Misty's presence. The former roommate described how she had found Misty fellating her four-year-old son on April 17, 1985. Misty's mother  ____________________ 16Weekends, legal holidays, and January 22 the date of the denial of the motion to compel should have been excluded from the running of the seven-day filing period. See Fed. R. ___ Civ. P. 6(a). Rule 6(e) further required that three days be added to the prescribed response period since the court order had been mailed to Reid. Fed. R. Civ. P. 6(e). Thus, he had until February 5, 1993, to respond. Reid seasonably filed opposition to the motion for summary judgment by depositing it with the prison warden on February 5. See Houston v. Lack, 487 U.S. 266, ___ _______ ____ 275 (1988) (holding that filing periods for prisoners are deter- mined when submitted to prison warden) (analogous FRAP 4 con- text); Oliver v. Commissioner of Massachusetts Dep't. of Correc- ______ ________________________________________________ tions, 30 F.3d 270, 272 (1st Cir. 1994) (same). _____ -20- 20 denied the allegations and accused Wendy of making false charges in order to force the mother into allowing her to move in with a boyfriend, and because Wendy was under the influence of drugs.  The DCYS reports further indicated that Wendy had refused to return to her mother's residence for a period of two weeks, and that the Manchester Police had attempted, without success, to find Wendy and return her to her mother. Wendy requested that she be placed in protective custody, but that her request was denied "due to lack of concrete evi- dence." Later, after joint counseling, Wendy voluntarily returned home. Finally, the DCYS reports reflect that during 1985 the year before Reid's arrest Misty's mother was under investigation for child abuse and neglect.  Reid contended that these materials established that both Misty and her mother were unreliable and that the mother had an ulterior motive for fabricating charges against Reid since she had been the subject of a DCYS investigation for abuse and neglect based on Wendy's allegations that the mother repeatedly had beaten her and Misty.17   ____________________ 17Reid contended further that the police defendants had not established their entitlement to summary judgment on his claim that they withheld the exculpatory evidence. The Reid affidavit attested that Sergeant Simmons had never disclosed at the probable cause hearing his prior reports of contact with Misty, nor "any other information which would lead a person to [believe] that the allegation made by the complainant wasn't the first such allegation made by her."  -21- 21 Although Reid's timely opposition and supporting materials were received and docketed on February 10, the police reports and the DCYS reports were returned to Reid the same day by the clerk, pursuant to Local Rule 14 which pro- vides that the clerk is not required to retain discovery materials. On February 22, Reid moved for reconsideration of the summary judgment order entered February 8.18 Reconsider- ation was summarily denied on May 10, 1993, though the excul- patory evidence was not before the court. The district court noted, however, that it had considered Reid's pro se objec- ___ __ tion and memorandum in opposition to the motion for summary judgment, which described some of the exculpatory evidence. Reid appealed. We review the summary judgment order de novo, __ ____ Lallemand v. University of Rhode Island, 9 F.3d 214, 215 (1st _________ __________________________ Cir. 1993), the Rule 56(f) order for abuse of discretion, Mattoon v. City of Pittsfield, 980 F.2d 1, 7 (1st Cir. 1992), _______ __________________ and the order denying reconsideration for abuse of discre- tion, Desenne v. Jamestown Boatyard, Inc., 968 F.2d 1388, _______ _________________________ 1392 (1st Cir. 1992).  The district court prematurely granted summary judgment on the claims that Reid was arrested without proba-  ____________________ 18The motion for reconsideration, accompanied by a support- ing affidavit and memorandum, was served on February 16, within ten days of the entry of the district court judgment on February 8, as required by Fed. R. Civ. P. 59(e). -22- 22 ble cause and that the police failed to disclose the exculpa- tory impeachment evidence to the prosecutors. As noted above, see note 8 supra, a procedural due process claim may ___ _____ not be redressed under section 1983 where an adequate state remedy exists. Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 __________ ______________ (1st Cir. 1994); Smith v. Massachusetts Dept. of Correction, _____ _________________________________ 936 F.2d 1390, 1402 (1st Cir. 1991); Torres v. Superintendent ______ ______________ of Police, 893 F.2d 404, 410 (1st Cir. 1990). Since New _________ Hampshire recognizes the common-law torts of false arrest, Hickox v. Morin, 272 A.2d 321, 323 (N.H. 1970), and malicious ______ _____ prosecution, Stock v. Byers, 424 A.2d 1122, 1123 (N.H. 1980), _____ _____ the claim that Reid was arrested without probable cause should have been addressed under New Hampshire law, not section 1983. Richardson v. Chevrefils, 552 A.2d 89, 92 __________ __________ (N.H. 1988); Opinion of the Justices, 493 A.2d 1189-90 (N.H. _______________________ 1985); Merrill v. Manchester, 332 A.2d 378, 383 (N.H. 1974) _______ __________ (abrogating doctrine of municipal immunity); see also N.H. ___ ____ Rev. Stat. Ann. 491:24. On the other hand, the allegation that the police withheld the exculpatory evidence from the prosecutors does not state an actionable claim under New Hampshire common law and thus must be analyzed under federal law in accordance with section 1983 jurisprudence. See Walk- ___ _____ er v. City of New York, 974 F.2d 293, 300 (2d Cir. 1992), __ _________________ cert. denied, 113 S. Ct. 1387 (1993), and cert. denied, 113 ____ ______ _____ ______ S. Ct. 1412 (1993); Henderson v. Fisher, 631 F.2d 1115, 1119 _________ ______ -23- 23 (3d Cir. 1980) (per curiam); Taylor v. Hansen, 731 F. Supp. ______ ______ 72, 78 (N.D.N.Y. 1990); Carter v. Harrison, 612 F. Supp. 749, ______ ________ 758 (E.D.N.Y. 1985).  Federal Rule of Civil Procedure 56(f) provides a safety valve for claimants genuinely in need of further time to marshal "facts, essential to justify [their] opposition . . . to a summary judgment motion." Mattoon, 980 F.2d at 7; _______ see Morrissey v. Boston Five Cents Savings Bank, No. 94-2220, ___ _________ ______________________________ slip op. at 17-20 (1st Cir. 1995) (further discovery sought under Rule 56(f) must be such as could establish a triable issue). The Rule 56(f) motion must "(1) articulate a plausi- ble basis for the belief that discoverable materials exist which would raise a trialworthy issue and (2) demonstrate good cause for failure to have conducted discovery earlier." Id. We have held that where the movant satisfies the re- __ quirements of Rule 56(f), "a strong presumption arises in favor of relief." Resolution Trust Corp. v. North Bridge _______________________ ____________ Assoc., 22 F.3d 1198, 1203 (1st Cir. 1994).  ______ Reid made a timely motion to defer ruling on the summary judgment motion, supported by an affidavit suffi- ciently describing the requested discovery. Prior to the Rule 56(f) motion, moreover, the magistrate judge had ordered the police defendants to respond to interrogatories previous- ly filed by Reid. The police defendants have never complied with the order to respond to these interrogatories. The -24- 24 unanswered interrogatories directly concern the critical DCYS reports on Misty, Wendy and their mother, and when the vari- ous police defendants became aware of these reports.  The requested discovery was essential to Reid's claims against the police defendants. When the individual police defendants learned of the exculpatory evidence is relevant to (1) whether the individual defendants reasonably could have believed there was probable cause to arrest Reid (false arrest claim) and (2) whether they initiated the criminal prosecution knowing that probable cause was lacking (malicious prosecution claim). When the exculpatory evidence was transmitted to the prosecutors is relevant to determining (3) whether the individual defendants attempted to withhold Brady material from the prosecutors (section 1983 claim). _____ The unanswered interrogatories were pertinent to all these matters. As the discovery sought is such that it could arguably generate a trialworthy issue of material fact, we must determine whether Reid complied with the other stric- tures of Rule 56(f). Given the direct police involvement in the bitter dispute between Wendy and her mother, and the two police reports relating prior sexual abuse of Misty, it cannot be considered implausible in the least that the police had access to the exculpatory information prior to Reid's arrest. ______ The requested information was within the control of the -25- 25 police defendants, a factor which weighs heavily in favor of relief under Rule 56(f). North Bridge Assoc., 22 F.3d at ___________________ 1208 (reversing denial of Rule 56(f) motion). Furthermore, Reid not only sought discovery in a timely manner, but ob- tained a court order requiring the police defendants to respond to his interrogatories. See Mattoon, 980 F.2d at 7 ___ _______ (failure of movant to pursue discovery with diligence permits denial of Rule 56(f) motion). Finally, the Reid motion, af- fidavit and interrogatories plainly identified the informa- tion requested. See Murphy v. Timberlane Regional Sch. ___ ______ _________________________ Dist., 22 F.3d 1186, 1197 (1st Cir.) (upholding denial of _____ Rule 56(f) motion where movant failed to identify information sought and to submit supporting affidavit), cert. denied, 115 _____ ______ S. Ct. 489 (1994); Nestor Colon Medina & Sucesors, Inc. v. ______________________________________ Custodio, 964 F.2d 32, 39 (1st Cir. 1992) (finding abuse of ________ discretion in denying portion of Rule 56(f) motion which clearly related facts which would generate a trialworthy issue).  In these circumstances Reid was entitled to receive responses to the unanswered interrogatories as previously ordered by the court, and the additional discovery requested in the Rule 56(f) motion. See generally Farmer v. Brennan,  ___ _________ ______ _______ _ U.S. , 114 S. Ct. 1970, 1985 (1994) (remanding Rule 56(f) ___ ruling for reconsideration in light of Court's holding that the central issue governing plaintiff's claim was when state -26- 26 officials actually acquired certain information). On remand, therefore, Reid should be allowed to conduct reasonable further discovery relating to the state-law and section 1983 claims against the police defendants.  C. The Conspiracy Claim Against Defense Counsel C. The Conspiracy Claim Against Defense Counsel ____________________________________________ Lastly, Reid challenges the denial of his motion to amend the third amended complaint by adding the claim that Attorney Renfro conspired with the prosecutors to conceal the exculpatory evidence. We review for abuse of discretion. Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 59 (1st _______________ __________________ Cir. 1990). "Where an amendment would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters." Id.  ___ The allegation that Renfro saw the exculpatory evidence, yet did not bring it to Reid's attention, is too conclusory to state a viable conspiracy claim. See Hunt v. ___ ____ Bennett, 17 F.3d 1263, 1268 (10th Cir.) (allegation that _______ attorney provided incompetent defense held insufficient to generate triable issue on conspiracy charge), cert. denied, _____ ______ 115 S. Ct. 107 (1994). The conclusory allegation that Renfro had access to the prosecution's file is insufficient to generate a trialworthy issue as to whether he had actual knowledge of the exculpatory evidence, since there is no allegation that the prosecution materials made available to Renfro included the exculpatory material. See Slotnick v. ___ ________ -27- 27 Garfinkle, 632 F.2d 163, 165-66 (1st Cir. 1980) (per curiam). _________ Accordingly, we conclude that the refusal to allow yet anoth- er amendment to the complaint at the present time did not constitute an abuse of discretion under the Correa-Martinez _______________ standard.19 III III CONCLUSION CONCLUSION __________ For the foregoing reasons, we affirm the summary judgment dismissing the claims against prosecutors Wageling and McDonough and the conspiracy claim against defendant Renfro. We vacate the judgment entered in favor of the police defendants, Simmons, Gilman, Ahern and Paul, on the false arrest, malicious prosecution, and due process claims, and remand all claims against the police defendants for further proceedings, including reasonable discovery. The ___ police defendants shall bear two-thirds of appellant's costs ______ __________ _____ ____ __________ __ ___________ _____ on appeal; all other costs are to be borne by the party who __ ______ ___ _____ _____ ___ __ __ _____ __ ___ _____ ___ incurred them. ________ ____ So ordered. So ordered. __ _______  ____________________ 19We note, nonetheless, that should further discovery result in new evidence relating to the nature and timing of the prosecu- tors' and defense counsel's acquisition of the exculpatory evidence, we are confident that a responsive proposal to amend the claim against Renfro would be accorded due consideration in light of the appropriate equitable criteria. See Quaker State ___ ____________ Oil Refining v. Garrity Oil Co., 884 F.2d 1510, 1517 (1st Cir. _____________ ________________ 1989). -28- 28